UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| DON HANVEY OIL TRUST, INC., *et al*, | § § § | |
| Appellants, | § | |
| VS. | § | CIVIL ACTION NO. C-10-202 |
| | § | |
| UNIT TEXAS DRILLING, LLC, | § § | |
| Appellee. | § | |

# ORDER

On June 3, 2010, the Bankruptcy Court entered the *Order Determining that Hanvey Plaintiff's Petitions Violate Plan Injunction and Denying Motion for Lift of Plan Injunction* ("June 3, 2010 Order"). On June 16, 2010, Appellants timely filed a notice of appeal. (D.E. 1.) Both Appellants and Appellee made designations for the record, and on July 28, 2010, the record was transmitted to this Court, and the appeal was docketed. On January 14, 2011, the parties presented their oral arguments to the Court. ("January 14, 2011 Oral Arguments.")

Having considered the record on appeal, the parties' briefs and oral arguments, and the applicable law, the Court hereby AFFIRMS the Bankruptcy Court's June 3, 2010 Order determining that the claims and causes of action asserted by Appellants are property of the Reichmann Estate and enjoining Appellants from filing their Amended Petition in state court.

**I.  Jurisdiction**

Court has jurisdiction to hear this appeal from a final order of the United States Bankruptcy Court for this district pursuant to 28 U.S.C. § 158(a)(1).

**II.  Background**

Appellants in this case are Don Hanvey Oil Interests, Inc. ("Don Hanvey") and eight other working interest owners in a gas lease on certain property in Johnson County, Texas. (The

Appellants are hereafter referred to collectively as "Hanvey" or as the "Hanvey plaintiffs"). Appellee is Unit Texas Drilling Co., L.L.C. ("Unit"), the owner and operator of a drilling rig that collapsed while drilling a lateral well in the Barnett Shale formation, located on Hanvey's leasehold property ("the well").

The record reveals that on March 13, 2006, Don Hanvey contracted with the Debtor, Reichmann Petroleum Corp. ("Reichmann"), a privately held oil and gas exploration and production company, to build the well. Under the terms of their contract (the "Operator Contract"), Don Hanvey was termed the "Operator" of the well, and Reichmann was termed the "Contract Operator." As Contract Operator, Reichmann was tasked with the duty to build the drill site location, drill "or cause to be drilled" the well to a depth of 11,000 feet, and generally supervise "all operations on the Well from the time of moving onto location to the point of the release of the drilling rig[.]" (Operator Contract at ¶ 1.)

Among other things, the Operator Contract obligated Don Hanvey to "hold Contract Operator [Reichmann] harmless and to indemnify it of and from all claims or causes of action that may be alleged from any claimants, including without limitation, the working interest owners in the Well, vendors, contractors, or others." It stated that "Contract Operator [Reichmann] shall not be liable to Company [Don Hanvey], working interest owners or others for any claim or causes of action arising out of the services rendered by Contractor hereunder except those arising out of the gross negligence or willful misconduct of Contract Operator [Reichmann] and/or its employees." (Operator Contract at ¶ 5.)

Reichmann, which was not a drilling company, sub-contracted the drilling project to Unit. Their contract (the "Drilling Contract"), which was entered into on January 17, 2006 and extended on March 27, 2006 to cover the drilling of Hanvey's well, designated Reichmann as

"Operator" and Unit as "Contractor" on the well. The Drilling Contract provided that Reichmann would be "solely responsible and assumes liability for all consequences of operations by both parties," including all "risks or liabilities incurred in or incident to such operations." It specified that, in the event the hole should be lost or damaged, Reichmann would be "solely responsible for such damage to or loss of the hole, including the causing therein[]" and that Reichmann would release Unit of any liability relating to such damage. (Drilling Contract at ¶ 14.5.)

At some point in 2006, the oil rig collapsed and the well was not completed as required under the above contracts. According to Hanvey, Unit's negligence was the cause of the mishap and the resulting damage deprived Hanvey of the benefits of the potential well, including the reserves in the Barnett Shale formation as well as the approximately $1,327,000 that Hanvey had paid for the drilling of a "worthless hole." (D.E. 4 at 6-7.)

Hanvey refused to pay Reichmann for the work performed in connection with drilling the well and is apparently indebted to Reichmann for joint interest billings in excess of $2.3 million in connection with the well. (January 14, 2011 Oral Arguments; D.E. 5 at 7.)

Reichmann subsequently defaulted on its payment obligations to Unit under the Drilling Contract, and filed for bankruptcy on December 8, 2006. The case was transferred from the Eastern District to the Southern District of Texas, Corpus Christi Division, styled as *In re Reichmann Petroleum Corporation, Debtor*, Case No. 06-20804-C-11.

On April 12, 2007, Unit filed a proof of claim against the Reichmann Estate, stating that Unit was owed an amount totaling $4,295,221.33 based on Reichmann's indemnity obligations under the Operator Contract.

On April 16, 2007, Hanvey filed a proof of claim against the Estate, claiming that Hanvey was owed $1,376,000 in "funds advanced [to Reichmann] for drilling which were misappropriated for other purposes" and that Reichmann's liability was based on the Operator Contract between Hanvey and Reichmann. (Appellee's Designation # 8, 9.) The Plan Trustee did not object to the Hanvey Proof of Claim and has not made any distributions from the Estate on account of the Hanvey Proof of Claim.

On May 2, 2008, Reichmann confirmed its Chapter 11 Bankruptcy Plan (the "Plan"). On June 5, 2008, the Bankruptcy Court issued a Confirmation Order confirming the Second Amended Plan. ("Confirmation Order.")

Although the Plan explicitly reserved certain of its claims – including claims against "Don Hanvey Oil & Gas, Inc. arising out of amounts due to Reichmann for work performed by Reichmann on the Well" and claims against "Unit arising out of a collapsed drilling rig on the Well" – the Plan did not purport to reserve for the Estate claims brought by Hanvey against Unit. (Appellees' Designation # 12, Ex. 14.)

The Plan also contained an Injunction, which permanently enjoined prosecution of claims that were property of the Reichmann Estate.[1]

---

[1] The Plan Injunction, contained in article 12.05 of the Plan and paragraph 12 of the Bankruptcy Court's Confirmation Order, provides:

> [A]ll holders of Claims against and Interests in the Debtor that are discharged pursuant to the Amended Plan or the Bankruptcy Code are permanently restrained and enjoined from taking any of the following actions against the Estate, the Debtor, the Creditor Trust or any of their property on account of any such discharged Claims, debts, liabilities or Interests or rights: (a) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim, debt, liability, or Interest against the Debtor or the Creditor Trust or their property on account of such Claims, debts, liabilities, or Interests, other than to enforce any right to a distribution pursuant to the Plan or a prior order of the Bankruptcy Court approving a sale or transfer of Estate property or Unassigned Working Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against the Debtor or the Creditor Trust or their property; (c) creating, perfecting, or enforcing any

The Plan Trustee for the Reichmann Estate objected to the Unit proof of claim and, around June 9, 2009, the Plan Trustee and Unit settled all claims based on Unit's liability to Reichmann under the Drilling Contract. Pursuant to the Settlement Agreement, approved by the Bankruptcy Court in its Settlement Order, Unit waived its right to receive distributions from the Estate and paid $150,000 to the Plan Trustee. The Plan Trustee and Unit agreed to mutual releases of any claims between them relating to the bankruptcy case, including all claims arising out of the Drilling Contract between Unit and Reichmann. (Settlement Agreement at ¶ 7.1; Declaration of Tracy Hindman at ¶ 30.)

On May 23, 2008, two weeks after the Plan was confirmed, Hanvey brought a lawsuit in state court against Unit, Unit Drilling Company, and Unit Corporation in the 18th District Court of Johnson County, Texas. See *Don Hanvey Oil Interests, Inc., et aI., Plaintiffs v. Unit Drilling Company, et al., Defendants,* Cause No. C-2008-00311. Hanvey's claims against Unit in the Original Petition were: breach of oral and written contract; fraud; fraud by nondisclosure; negligence; negligent misrepresentation; and breach of implied and express warranties. (Original Petition at 6-10.)

Unit promptly notified the state court that Hanvey's claims arising out of the collapsed drilling rig on the well were property of the Reichmann Estate and as such were barred by the Plan Injunction. The state court closed the case around June 12, 2009. . (D.E. 5 at 9.)

On September 1, 2009, Hanvey filed a motion to the United States Bankruptcy Court requesting that the Bankruptcy Court determine whether the Plan Injunction was applicable to

---

encumbrance or Lien of any kind against the Debtor or the Creditor Trust or their property .... ; provided however, that each holder of a Disputed Claim or Interest may continue to prosecute its proof of Claim or Interest in this Court and all holders of Claims and Interests shall be entitled to enforce their rights under the Amended Plan ....

(Confirmation Order at ¶12.)

Hanvey's state court claims against Unit. Hanvey also proposed to file an Amended Petition, removing the breach of contract claim and leaving only the claims for fraud, negligence, negligent misrepresentation, and breach of express warranty.

In its response to Hanvey's motion, Unit argued that all of Hanvey's claims sounded in contract, that any claims Hanvey had were against Reichmann, and that all claims Hanvey attempted to bring against Unit were property of the Reichmann Estate and had already been settled in the Unit-Reichmann settlement. (D.E. 5 at 9.)

In its June 3, 2010 Order, the subject of this appeal, the Bankruptcy Court found that all claims and causes of action alleged by Hanvey against Unit belonged to the Reichmann Estate. The Court enjoined the Hanvey plaintiffs from asserting the causes of action alleged in the Original Petition and from filing their Amended Petition. (June 3, 2010 Order at 7.) The Court held that Hanvey's Original Petition violated the Plan Injunction and denied Hanvey's motion to lift the Injunction. (June 3, 2010 Order at 8.)

On June 16, 2010, Hanvey timely filed a notice of appeal to this Court. Both Appellants and Appellee made designations for the record, and on July 28, 2010, the record was transmitted to this Court and the appeal was docketed.

Hanvey filed its principal appellate brief on August 11, 2010. (D.E. 4.) Unit filed its response on August 25, 2010. (D.E. 5.) Hanvey filed a reply brief on September 8, 2010. (D.E. 6.)

On January 14, 2011, the parties presented their oral arguments to the Court. (January 14, 2011 Oral Arguments.)

## III. DISCUSSION

### A. Standard of Review in Bankruptcy Appeals

In a bankruptcy appeal, the court generally reviews findings of fact under the clearly erroneous standard, while conclusions of law are reviewed *de novo*.  In re Evert, 342 F.3d 358, 363 (5th Cir. 2003).  The parties agree on this general standard but disagree over which standard of review applies to the Court's review of the Bankruptcy's Court's interpretation of the Reichmann Bankruptcy Plan in its Confirmation Order, and the Bankruptcy Court's interpretation of its Confirmation Order in the June 3, 2010 Order.  (D.E. 5 at 1; D.E. 6 at 1-2.)

Unit argues that the Bankruptcy Court's interpretation of the Plan should be treated with deference and reviewed only for abuse of discretion.  (D.E. 5 at 24) (citing In re O'Connor, 258 F.3d 392, 401 (5th Cir. 2001) ("In reviewing a bankruptcy court's interpretation of a confirmed plan…the reviewing court should extend to that interpretation the same deference that is otherwise paid to a court's interpretation of its own order.")

Hanvey argues that the deferential standard articulated in In re O'Connor does not alter the Fifth Circuit's generally applicable *de novo* standard of review for issues of law, and points out that the Fifth Circuit has more recently applied the *de novo* standard to a bankruptcy court's interpretation of a confirmed reorganization plan.  (D.E. 6 at 2) (citing Bankruptcy Trading & Invs., L.L.C. v. Barnett Marine, Inc. (In re Barnett Marine, Inc.), 269 Fed. Appx. 534, 535 (5th Cir. 2008) (applying *de novo* standard of review and ultimately upholding district court's affirmation of bankruptcy court's interpretation of plan)).

The rationale behind giving full deference to a bankruptcy court's interpretation of a plan is that "the bankruptcy court presided at the confirmation hearings, considered the relevant factual and legal arguments, made extensive findings and conclusions in connection with

confirmation, and so developed a comprehensive understanding of the Plan." See In re National Gypsum Co., 219 F.3d 478, 483-84 (5th Cir. 2000. (citing Plan Trustee's argument in support of deferential standard of review of bankruptcy court's interpretation of plan and confirmation order).

However, when, as here, the primary issues on appeal are purely legal ones, a *de novo* review is more appropriate. In re Evert, 342 F.3d at 363; see also Advisory Comm. of Major Funding Corp. v. Sommers (In re Advisory Comm. of Major Funding Corp.), 109 F.3d 219, 222 (5th Cir. 1997) ("This appeal only involves questions of law, and, therefore, this court's review is *de novo*."); In re National Gypsum Co., 219 F.3d at 484. Accordingly, this Court will review the Bankruptcy Court's interpretation of the Reichmann Estate Plan and the Confirmation Order *de novo*.

### B.   Analysis

The primary issue on appeal is whether the Bankruptcy Court properly held in its June 3, 2010 Order that the state court claims brought by the Hanvey plaintiffs arising from Unit's allegedly improper drilling of the well were the property of the Reichmann Bankruptcy Estate.

Property of a debtor's estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The term "all legal or equitable interests" has been defined broadly to include causes of action. Schertz-Cibolo-Universal City v. Wright (In re Educators Group Health Trust), 25 F.3d 1281, 1284 (5th Cir. 1994) (citing Louisiana World Exposition v. Federal Ins. Co., 858 F.2d 233, 245 (5th Cir. 1988); In re Mortgage America Corp., 714 F.2d 1266, 1274 (1983)). If a cause of action belongs to the estate, then the trustee has exclusive standing to assert the claim. Id. (citing Matter of S.I.

Acquisition, Inc., 817 F.2d 1142, 1153-54 (5th Cir. 1987); In re E.F. Hutton Southwest Properties II, Ltd., 103 Bankr. 808, 812 (Bankr. N.D. Tex. 1989)).

"Whether a particular state-law claim belongs to the bankruptcy estate depends on whether under applicable state law the debtor could have raised the claim as of the commencement of the case." Highland Capital Mgmt. LP v. Chesapeake Energy Corp. (In re Seven Seas Petroleum, Inc.), 522 F.3d 575, 584 (5th Cir. 2008) (citing In re Educators Group Health Trust, 25 F.3d at 1284.)  "As part of this inquiry, we look to the nature of the injury for which relief is sought and consider the relationship between the debtor and the injury." Id.  "If a cause of action alleges only indirect harm to a creditor (i.e., an injury which derives from harm to the debtor), and the debtor could have raised a claim for its direct injury under the applicable law, then the cause of action belongs to the estate." Id. (quoting In re Educators Group Health Trust, 25 F.3d at 1284).  "Conversely, if the cause of action does not explicitly or implicitly allege harm to the debtor, then the cause of action could not have been asserted by the debtor as of the commencement of the case, and thus is not property of the estate." Id. (quoting In re Educators Group Health Trust, 25 F.3d at 1284); see also In re Schimmelpenninck, 183 F.3d 347, 359 (5th Cir. 1999) ("A trustee can assert the general claims of creditors, but is precluded from asserting those creditor claims that are personal.")

Whether a specific cause of action belongs to a bankruptcy estate is a matter of law that the court decides by reference to the facial allegations in the plaintiff's complaint. In re Educators Group Health Trust, 25 F.3d at 1285.

### 1. The Bankruptcy Court's Holding

In the June 3, 2010 Order, the Bankruptcy Court explained that the Reichmann Estate includes all "legal or equitable interests of the debtor in property as of the commencement of the

case," including causes of action. (June 3, 2010 Order at 6) (quoting 11 U.S.C. § 541(a)(1)) (citing In re Educators Group Health Trust, 25 F.3d at 1284.) The Court reasoned that "[s]ince Reichmann not only could have asserted, but did in fact assert the claims alleged by the Hanvey Plaintiffs against Unit prior to commencement of the Reichmann Bankruptcy, such claims constitute property of the Debtor's estate." (June 3, 2010 Order at 6) (citing In re Educators Group Health Trust, 25 F.3d at 1284.)

"In fact," the Bankruptcy Court stated, "the claims and causes of action alleged in the Hanvey Petition and the Hanvey Amended Petition against Unit could have only been properly brought by the Debtor." (June 3, 2010 Order at 6) (citing Smith v. L.D. Burns Drilling Co., 852 S.W.2d 40, 41 (Tex. App. Waco 1993)).

The Court noted that the facts of Hanvey's case were precisely analogous to those in Smith v. L.D. Burns Drilling Co., where the Texas Court of Appeals held that investors in an oil drilling operation could not bring claims for negligence and breach of contract against a drilling contractor. According to the Bankruptcy Court, the reasoning behind the holding in Smith was that the drilling contractor owed no duty, whether contractual or in tort, to the investors. Because the investors' rights as working interest owners were "completely derivative" of the drill operator's rights and obligations as the well operator, "the investors could not individually pursue claims arising out of the operator's relationship with the drilling contractor." (June 3, 2010 Order at 6.)

The Bankruptcy Court reasoned that, like the drilling contractor in Smith, Unit owed no duty in contract or tort to Hanvey. Rather, Unit only owed such duties to Reichmann, which had assumed the responsibility to drill the well under the Operator Contract. Therefore, like the investors in Smith, the Hanvey plaintiff's rights as working interest owners in the Leasehold

were "completely derivative" of Reichmann's rights and obligations as the well operator. The Court concluded that, because the Hanvey plaintiffs could not individually pursue their claims against Unit, the Hanvey plaintiff's causes of action against Unit, in either contract or tort, belonged to Reichmann. (June 3, 2010 Order at 6-7.)

Having concluded Hanvey's claims were property of the Estate, the Bankruptcy Court further held that any claims Hanvey had against Unit were released pursuant to the Reichmann-Unit Settlement Agreement and Settlement Order. (June 3, 2010 Order at 7.) The Bankruptcy Court further held that the Plan Injunction and Confirmation Order permanently enjoined Hanvey's claims against Unit, as stated both the original and the amended petition, and that no stay from the Injunction was warranted. (June 3, 2010 Order at 7-8.)

### 2. Hanvey's Arguments On Appeal

Hanvey's primary argument on appeal is that, in concluding Hanvey's claims were property of the Reichmann Estate, the Bankruptcy Court wrongly concluded that because Reichmann could have, and did, assert similar claims against Unit based on Unit's allegedly improper drilling of the well, this means that Hanvey could not also independently own claims against Unit arising from the same set of facts. (D.E. 4 at 16-18.)

Hanvey relies on In Re Seven Seas Petroleum, where the debtor's unsecured bondholders sued one of the debtor's secured creditors, bringing claims that were also asserted by the bankruptcy trustee. The Fifth Circuit rejected the trustee's contention that the bondholders' claim was "strictly derivative" of the debtor's simply because the debtor had also suffered harm as a result of the same events. 522 F.3d at 585. Rather, the court stated, "it is entirely possible for a bankruptcy estate and a creditor to own separate claims against a third party arising out of the same general series of events and broad course of conduct." Id. So long as the bondholders'

alleged injury was not "merely derivative" of the debtor's injury, the bondholders' claims and the estate's claims were not "mutually exclusive: there is nothing illogical or contradictory about saying that [the third party] might have inflicted direct injuries on both the bondholders and [the debtor] during the course of dealings that form the backdrop of both sets of claims." Id. at 587.

The Fifth Circuit found that, although some of the claims asserted by the bondholders alleged injuries that were merely derivative of the debtor's and could have been raised by the debtor at the commencement of the case, the bondholders also alleged independent injuries giving rise to claims that the debtor could not have brought on its own right. Id. at 586.

In this case, Hanvey contends that, based on the allegations in the state court petitions, the Hanvey plaintiffs suffered injuries distinct from those suffered by Reichmann due to Unit's breach of the Drilling Contract. Hanvey contends that, in finding the gas lease owners' injury to be "completely derivative" of Reichmann's, the Bankruptcy Court wrongly evaluated the merits of Hanvey's claims, determining that because Hanvey had no claims that *had merit* under Texas law, Hanvey's claims belonged only to Reichmann. (D.E. 4; D.E. 6; January 14, 2011 Oral Arguments.)

Hanvey contends that the Bankruptcy Court's approach was improper under Fifth Circuit law. In In Re Seven Seas Petroleum, discussed above, the appellees had argued that the bondholders' claims, even if they alleged independent injury, would not succeed under the applicable laws. The Fifth Circuit rejected this argument, stating:

> It bears emphasizing that our holding here is a narrow one that in no way passes on the merits of the claims. **It is not our place to consider whether the [plaintiff bondholders'] allegations are sufficient to state a cause of action under Texas law, or to speculate as to what set of facts might ultimately be proven in support of recovery.** For this reason, several of the objections that [appellee defendant] raises against the claims--that the claims do not allege that the bondholders had any contractual privity with [defendant], or allege that [defendant] owed the bondholders any legal duties, or explain how [defendant] might have benefitted when the bondholders acquired

interests in the unsecured notes--are largely irrelevant to the narrow issue before us. **Simply put, the fact that the [plaintiff's] ultimately may be unable to prevail on the claims does not render the claims property of the estate.**

In re Seven Seas Petroleum, Inc., 522 F.3d at 587-588 (emphasis added).

According to Hanvey, this holding means that the fact that the Hanvey plaintiffs may be unable to prevail on their state court claims against Unit does not render Hanvey's claims property of the Reichmann Estate. Rather, the Bankruptcy Court should have considered only whether Hanvey's claims, *as alleged*, indicated direct injury to Hanvey, separate from injury to Reichmann, as a result of Unit's conduct. In re Seven Seas Petroleum, Inc., 522 F.3d at 584. Hanvey contends that, had the Bankruptcy Court properly conducted this analysis, it would have found that Hanvey's claims for property damage to Hanvey's Leasehold could not have been asserted by Reichmann as of the commencement of the bankruptcy case because those claims were "personal" to the Hanvey plaintiffs and based on direct injury to them. (D.E. 4 at 13.)

### 3. Hanvey's Claims Are Property Of The Reichmann Estate

In order to decide whether Hanvey's claims against Unit are property of the Estate, the Court must analyze each of Hanvey's claims to determine whether any or all of them allege direct injury to Hanvey that is not merely derivative of injuries to Reichmann, and whether the claims could have been asserted by Reichmann as of the commencement of the bankruptcy. In re Seven Seas Petroleum, Inc., 522 F.3d at 584; Educators Group Health Trust, 25 F.3d. at 1284.

Although the Fifth Circuit indicated in Seven Seas that it is not this Court's role to determine whether Hanvey's allegations are sufficient to state a cause of action under Texas law, or to speculate as to what set of facts might ultimately be proven in support of recovery, 522 F.3d at 587, as a procedural matter, the Court nonetheless must evaluate "the facial allegations in the

complaint" to determine whether, under applicable law, Reichmann could have raised the claims prior to commencement of the bankruptcy. Id. at 583.

Having performed this analysis, the Court finds the Hanvey plaintiffs are not seeking to redress a particularized injury caused directly to them by Unit. Hanvey's Amended Petition alleges that, as a result of Unit's allegedly improper drilling of the well, the "plaintiffs have suffered actual damage *to their property* in the form of physical damage to the well, the hole, and the underground formation." (Amended Petition at 5) (emphasis added). Hanvey contends that the plaintiffs' Lease was damaged by Unit, and that, therefore, their injuries "are not parallel to Reichmann's breach of contract claims related to Unit's failure to properly drill the Well as contracted." (D.E. 6 at 6.) Hanvey contends the plaintiffs "seek to redress injuries to their Leasehold." (Id.)

However, the alleged injury to the Hanvey plaintiffs' Leasehold is entirely concurrent with the injury to Reichmann caused by Unit's actions in breaching the Drilling Contract by improperly drilling the well. With respect to Hanvey's negligence claims, the Hanvey plaintiffs do not sufficiently indicate that Unit owed a separate duty, or caused a separate harm, *particularly to them*, as opposed to Unit as the Drilling Contractor.[2] Without evaluating the merits of Hanvey's claims, the Court notes (as the Bankruptcy Court did) that it is not even clear that such a duty exists under Texas law. See Smith., 852 S.W.2d at 41-42.

Even if Unit had a separate duty not to damage the Hanvey plaintiffs' property, this damage was encompassed by the damages caused to the subject matter of the Drilling Contract between Unit and Reichmann: namely, the well, the well site, the hole, and the surrounding

---

[2] Hanvey's negligence cause of action asserts that Unit was had "a duty to exercise ordinary care not to injure plaintiffs' property. Unit breached its duty by providing a drilling rig that did not meet the contract specifications and that was not adequate for drilling the well and by failing to use ordinary care in inspecting, repairing, testing and operating the rig and in drilling the well. This negligence caused damage to plaintiff's property." (Amended Petition at 3-4.)

property. Damages to these areas were governed by the Drilling Contract's indemnity provision, providing that the Well Operator (Reichmann) would hold the Drilling Contractor (Unit) harmless and indemnify it from all claims relating to "damage to or loss of the hole." (Operator Contract, ¶14.5.)

As Unit points out, under Texas law, when the alleged injury is "only the economic loss to the subject matter of a contract itself, the action *sounds in contract alone*." Wismer Distrib. Co. v. Brink's, Inc., 202 Fed. Appx. 729, 731 (5th Cir. 2006) (quoting Jim Walter Homes, Inc. v. Reed, 711 S.W.2d 617, 618 (Tex. 1986) (emphasis added). Indeed, under the "economic loss rule," parties are generally prohibited from recovering in tort for economic losses resulting from the failure of a party to perform under a contract. See Lamar Homes, Inc. v. Mid-Continent Casualty Co., No. 05-0832, 242 S.W.3d 1, 2007 Tex. LEXIS 797 (Tex. Aug. 31, 2007). Thus, Hanvey may not even have any viable claims against Unit under Texas law.[3] Regardless: all of the claims in the Amended Petition are based on the same injury as Reichmann suffered due to Unit's alleged breach of the Drilling Contract. Reichmann could have (and apparently did) bring these claims at the commencement of the bankruptcy. In re Seven Seas Petroleum, Inc., 522 F.3d at 584.

---

[3] Hanvey argues that the economic loss rule would not bar their tort-based claims, given the absence of privity between Hanvey and Unit. See Elk Corp. v. Valmet Sandy-Hill, Inc., C.A. No. 3:99-cv-2298-G, 2000 U.S. Dist. LEXIS 3586, *8 (N.D. Tex. Mar. 21, 2000) (stating, in the context of its finding that a party had not been fraudulently joined, that the Court "[could]not conclude that [the plaintiff's] claims [we]re clearly barred by the economic loss doctrine," where there was no contractual privity between the plaintiff and the defendant) (citing, e.g., Jackson v. Dole Fresh Fruit Co., 921 F. Supp. 454, 459 (S.D. Tex. 1996)). Unit responds that the Elk court's holding should be disregarded, as that court was ruling in the context of determining fraudulent joinder, and points out that some Texas courts have held otherwise. See Sterling Chems., Inc. v. Texaco Inc., 259 S.W.3d 793, 797 (Tex. App. Houston 1st Dist. 2007) ("Texas courts have applied the economic loss rule to preclude tort claims between parties who are not in contractual privity.") (citing, e.g., Trans-Gulf Corp. v. Performance Aircraft Servs., Inc., 82 S.W.3d 691, 695 (Tex. App.--Eastland 2002, no pet.)) However, again, the Court is not concerned with whether Hanvey's claims have merit under Texas law. The Court's role is to determine whether the Hanvey plaintiffs assert direct injury to themselves separate from injury to Reichmann under the Drilling Contract. In re Seven Seas Petroleum, Inc., 522 F.3d at 584.

With respect to Hanvey's fraud and negligent misrepresentation claims, the Hanvey plaintiffs do not even allege in the Amended Petition that Unit made any false statements or misrepresentations regarding the suitability of Unit's equipment and operations *to them*, as opposed to Reichmann.[4] Under these circumstances, it is apparent that the alleged harm was not directly to Hanvey, but was merely derivative of the harm caused to Reichmann, and that these fraud-based claims belong to the Estate. See In the Matter of Educators Group Health Trust, 25 F.3d. at 1284 (holding claims for fraud and conspiracy to commit fraud belonged to plaintiff school districts rather than the estate only "*to the extent that these claims are based on alleged false misrepresentations to the plaintiff school districts*.") (emphasis added).[5]

The record provides further support for the conclusion that all of the Hanvey plaintiffs' claims are really Reichmann's contract-based claims in disguise. Hanvey's Original Petition, which the Bankruptcy Court determined violated the Plan Injunction, included a claim for breach of contract and breach of implied warranties in the contract based on Hanvey's status as the "*intended and direct beneficiaries*" of the Drilling Contract between Unit and Reichmann. (Original Petition at 7.) As Unit points out, the damages alleged by Hanvey in the Original Petition – for the difference between the value of the reserves actually produced from the well and their value if the well had been properly drilled, or, alternatively, the amount Hanvey paid to

---

[4] Hanvey's fraud claim alleges that "Unit's representation that the mast was capable of supporting a static hook line pressure of 440,000 pounds was a representation of a present existing fact[]" and that said misrepresentation "caused plaintiffs' damage." (Amended Petition at 4.) Hanvey's negligent misrepresentation claim alleges that "by representing that the mast was capable of supporting a static hook line pressure of 440,000 pounds, Unit supplied false information for the guidance of others in their business transactions and failed to exercise reasonable care or competence in obtaining and communicating that information[,]" causing plaintiffs to suffer "pecuniary loss." (Id.)
[5] The Court does not need to pierce the pleadings to reach this conclusion. But the record also shows that Hanvey was not a party to the Drilling Contract; that Reichmann alone directed Unit's performance under the Contract; and that Unit did not communicate with Hanvey during negotiations of the Contract or during drilling of the well. Unit's General Manager, Tracy Hindman, notes that some months prior to execution of the Drilling Contract, Hanvey had called her to see if Unit had any available rigs to drill a well. (Proffer of Tracy Hindman in Support of Unit's Response to Hanvey's Motion at 3.) However, Hanvey did not follow up on the request, id. at 5, ¶¶ 21-23, and Hindman contends Unit had no knowledge Reichmann and Hanvey had entered into their contract to drill the well. Id. at ¶ 24.

Reichmann under the Operator Contract – are classic measures of consequential and direct damages for breach of contract. (D.E. 5 at 12.)

It is thus apparent that, in the Amended Petition, Hanvey simply deleted any contract-based claims it might have asserted against Unit, in order to avoid the inevitable conclusion that it really only has one set of claims, and that they are directly parallel to Reichmann's claims for breach of contract. Hanvey's proper recourse in this matter was to assert breach of contract claims against *Reichmann* based on breach of the Operator Contract under which Reichmann was obligated to drill (or "cause to be drilled") the well – not to assert tort and breach of warranty claims against Reichmann's sub-contractor. Such claims would, most likely, have been barred under the indemnity provision in the Operator Contract.[6] But, as counsel for Unit aptly put it in oral argument, the Hanvey investors should not be able to "get a trade in the courthouse that they could not get in the marketplace." (January 14, 2010, Oral Arguments.)

As discussed above, Hanvey relies on the Fifth Circuit's holding in Seven Seas to support its argument that the Hanvey plaintiffs' claims belong solely to them, and not to the Estate. However, in Seven Seas, the Fifth Circuit found the alleged injury to the bondholders as a result of the third-party defendants' actions was "direct" and "independent of any injury to [the debtor.]" 522 F.3d at 586. In reaching this conclusion, the Fifth Circuit stated:

> We fail to see what direct injury [the debtor] might have suffered on account of the specific wrongdoing that the bondholders complain of here. Although [the debtor] is not named as a defendant, *the bondholders' theory is that [the debtor] was itself a wrongdoer, in conjunction with [the third party defendants].* It is thus not surprising that the injury that this claim alleges is not derivative of an injury to [the debtor.]

---

[6] The Operator Contract provided that Reichmann would not be liable to Don Hanvey or the other working interest owners for "any claim or causes of action arising out of the services rendered by [Reichmann] hereunder except those arising out of the gross negligence or willful misconduct of Contract Operator [Reichmann] and/or its employees." (Operator Contract at ¶ 5).

Id. (emphasis added). Based on this statement it is apparent that the Fifth Circuit found that the bondholders' injury was particular to them and did not implicate any "direct injury" to the debtor, largely because the bondholders alleged that the debtor had been involved in a conspiracy against them in conjunction with the third party defendants. Id. As such, the court doubted that the debtor could have brought the bondholders' claims under applicable law. Id.

In this case, in contrast, there are no circumstances indicating that Reichmann could not assert all the claims asserted by the Hanvey plaintiffs in the Amended Petition. The Hanvey plaintiffs' claims may not be *identical* to the claims Reichmann did or could have brought against Unit. The Hanvey plaintiffs, unlike Reichmann, are working interest owners in the Lease; and they were not in privity of contract with Unit. Yet the Hanvey plaintiffs seek to redress the same injury – namely, damage to the well and all consequential damages therefrom – and they make the same underlying allegations – namely, improper drilling of the well in violation of a duty of care as well as in breach of a contract. No amount of artful pleading will disguise that they are the same claims, properly settled by the Bankruptcy Estate. See National Am. Ins. Co. v. Ruppert Landscaping Co., 187 F.3d 439, 442 (4th Cir. 1999) ("To allow selected creditors to artfully plead their way out of bankruptcy court would unravel the bankruptcy process and undermine an ordered distribution of the bankruptcy estate.") (citing Litchfield Co. v. Anchor Bank (In re Litchfield Co.), 135 B.R. 797, 804 (W.D.N.C. 1992) (holding that although claims of the debtor and an individual creditor are "not identical" the court can stay proceedings initiated by the creditor in order to avoid "interfering with property of the estate")).

Accordingly, the Court finds the claims in the Amended Petition belong to the Reichmann Estate and were properly settled pursuant to the Settlement Agreement. The Bankruptcy Court also properly interpreted the Plan Injunction and Confirmation Order as

permanently enjoining Hanvey from prosecuting claims in the Original Petition against Unit and as preventing Hanvey from filing its Amended Petition in state court. (June 3, 2010 Order at 7) (citing 11 U.S.C. § 362).[7] The Bankruptcy Court properly retained jurisdiction over the claims.

### IV. Conclusion

For the reasons stated above, the Court AFFIRMS the Bankruptcy Court's June 3, 2010 Order. The claims and causes of action asserted by Appellants are property of the Reichmann Estate that were released pursuant to the Unit/Reichmann Settlement Agreement. Appellants' Original Petition violates the Plan Injunction. Appellants are enjoined from filing their Amended Petition in state court.

SIGNED and ORDERED this 16th day of February, 2011.

Janis Graham Jack
United States District Judge

---

[7] Pursuant to 11 U.S.C. § 105, a bankruptcy court may issue any order necessary to carry out the provisions of the Bankruptcy Code. Section 362 of the Bankruptcy Code allows an automatic stay of various proceedings, including "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." § 362.